**FRANK A. WISE and WDW, INC., Appellants**

**v.**

**GEORGE DeWERD, COTE DE LA MER CORPORATION and PALM BEACH, INC.**

No. 15,534, Appeal of Frank A. Wise

No. 15,535, Appeal of WDW, Inc.

United States Court of Appeals

Third Circuit

Argued February 4, 1966

Decided April 4, 1966

*See, also, 358 F.2d 389*

GEORGE H. T. DUDLEY, ESQ. (DUDLEY, HOFFMAN & GRUNERT), Charlotte Amalie, St. Thomas, Virgin Islands, *for appellants*

THOMAS D. IRELAND, ESQ. (MAAS & IRELAND), Charlotte Amalie, St. Thomas, Virgin Islands, *for appellee*

Before KALODNER, *Chief Judge*, and MARIS and HASTIE, *Circuit Judges*

MARIS, *Circuit Judge*

OPINION OF THE COURT

This is a suit brought in the District Court of the Virgin Islands by the plaintiffs Frank A. Wise and his wholly owned corporation WDW, Inc. against the defendants George DeWerd and his wholly owned corporation Cote De La Mer Corporation, and Palm Beach, Inc. The complaint, as amended, sought an accounting of the net profits of a

joint venture between WDW, Inc. and Cote De La Mer Corporation, the share of which due WDW, Inc. was alleged to be $11,849.60, and $50,000.00 damages. Defendant DeWerd counterclaimed against plaintiff Wise for $45,000.00 alleged to be owing as a debt and $100,000.00 damages, and against plaintiff WDW, Inc. for $47,000.00 alleged to be owing as a debt.

After a full trial the court concluded (1) that Wise owes DeWerd $45,000.00 for stock of Bon Ami, Inc. which he purchased under an agreement of February 13, 1962, as modified May 2, 1963; (2) that WDW, Inc. owes DeWerd $47,000.00 for unpaid additional compensation under the joint venture agreement between WDW, Inc. and Cote De La Mer Corporation of August 23, 1962; (3) that WDW, Inc. owes DeWerd $21,446.00 for amounts paid on WDW, Inc. obligations; (4) that DeWerd owes Wise $5,000.00 for his one-third share of the net assets of Palm Beach, Inc., which the court declared to be a partnership between them and declared dissolved; (5) that the joint venture between WDW, Inc. and Cote De La Mer Corporation has ceased to exist, the court declaring it dissolved; and (6) that Cote De La Mer Corporation owes WDW, Inc. $10,652.97, the excess of what it took out of the joint venture above its two-thirds share. Judgment was entered accordingly and the plaintiffs, Wise and WDW, Inc. have appealed.

The evidence discloses that early in 1962 Wise and DeWerd met in St. Thomas. Informed that Wise had money to invest there DeWerd took him to see a tract of land of 34.10 acres, Parcel Nos. 14 and 15, Estate Bonne Resolution, in the Little Northside Quarter of St. Thomas, which he had acquired subject to a $66,200.00 purchase money mortgage and which he desired to develop. Wise himself had no money to invest but he was in contact with a Puerto Rico corporation, MacDonald of Puerto Rico, Inc., which was in position to do so. DeWerd then organized a Virgin

Islands corporation Bon Ami, Inc. to which he conveyed the Bonne Resolution land in payment for 1,000 shares of its capital stock. By an agreement of February 13, 1962 DeWerd sold to Wise 250 of these shares for $45,000.00, $10,000.00 payable in one year and $35,000.00 in ten annual installments of $3,500.00 each commencing February 13, 1963. On February 16, 1962 DeWerd sold to MacDonald of Puerto Rico, Inc., 250 shares of stock of Bon Ami, Inc., for $45,000.00, $10,000.00 payable at that time and the balance of $35,000.00 payable annually in installments of $3,500.00 each for ten years. On August 7, 1962 MacDonald of Puerto Rico, Inc. purchased from DeWerd and Wise their 750 shares of stock of Bon Ami, Inc. 500 from DeWerd and 250 from Wise for the sum of $36,000.00 in cash, $24,000.00 to DeWerd and $12,000.00 to Wise. In addition MacDonald of Puerto Rico, Inc. granted to DeWerd and Wise an option to purchase the individual lots comprising the subdivision of the Bonne Resolution land and known as the Bon Ami Project, for a period of 18 months at $1,500.00 per lot plus all costs attributable to the lot. Thereafter DeWerd and Wise ceased to have any further interest in Bon Ami, Inc., or in the land which it owned other than the option above mentioned.

On August 23, 1962 WDW, Inc., all of the stock of which was owned by Wise, and Cote De La Mer Corporation, all of the stock of which was owned by DeWerd, entered into a joint venture agreement for the development of the land owned by Bon Ami, Inc. WDW, Inc. was to have a one-third interest and Cote De La Mer Corporation a two-thirds interest in the joint venture. Wise was to be business manager at a salary of $150.00 per week and DeWerd project manager at a salary of $200.00 per week. In addition the agreement provided "that George DeWerd shall be paid the amount of $47,000.00 as additional compensation, the said amount to be paid in sums of $500.00 each upon the

closing of the first ninety-four (94) lots sold by the joint venture." The $36,000.00 received by DeWerd and Wise from the sale of their Bon Ami, Inc. stock was turned in by them as capital for the joint venture. On May 2, 1963 DeWerd and Wise entered into an agreement providing that the agreement of February 13, 1962 between them relating to the purchase by Wise of stock of Bon Ami, Inc. and the eleven promissory notes totalling $45,000.00 subsequently issued to DeWerd in payment should be cancelled. In lieu thereof Wise agreed to pay DeWerd the sum of $500.00 "at the time of closing of each of the first ninety (90) lots sold pursuant to the Joint Venture . . . between Cote De La Mer Corporation and WDW, Inc. relating to the so-called Bon Ami Project, the said payment to be made in each case directly to DeWerd by the attorney representing the said Joint Venture in selling the particular lot in question." It was further provided that "At the time of making each such payment, the said attorney shall credit Wise with the amount thereof and shall deduct the same from the then outstanding balance of the said Forty-five Thousand Dollars ($45,000.00) owing by Wise to DeWerd."

The joint venture entered into several successive agreements with MacDonald of Puerto Rico, Inc. for development work on the Bon Ami, Inc., land. The joint venture had received from MacDonald of Puerto Rico, Inc. the aggregate sum of $289,880.00 for this work when on September 17, 1963 the parties terminated their relationship by formal agreement in which each released the others from the obligations of their prior agreements, including, specifically, the agreement of August 7, 1962 under which DeWerd and Wise had been given an option to purchase the lots comprising the Bon Ami Project. It does not appear that any lots had been taken up and sold under that option prior to its termination on September 17, 1963, however. During the time the joint venture was being carried on

Wise took care of the business affairs, managed the office and attended to the financing, handling all collections and disbursements. DeWerd acted as the project manager and general superintendent of all the actual field work. By 1964 the joint venture had ceased to exist although a formal dissolution agreement has never been executed. DeWerd subsequently personally paid $21,446.00 of the unpaid debts of the joint venture. WDW, Inc.'s one-third share of these obligations would be $7,148.67.

The net profit from the operations of the joint venture was $34,488.73, WDW, Inc.'s share being $11,496.24 and Cote De La Mer Corporation's share being $22,992.49. WDW, Inc. received from the joint venture cash advances of $12,337.27 plus $800.00 from the sale of a crane, a total of $13,137.27. Cote De La Mer Corporation received from the joint venture cash advances of $43,000.00 plus equipment worth $15,233.46, a total of $58,233.46. Thus a total of $71,370.73 was taken out of the joint venture by the two adventurers. Of this amount Cote De La Mer Corporation was entitled to two-thirds or $47,580.49 and WDW, Inc. to one-third or $23,790.24, which is $10,652.97 more than it actually received.

On March 7, 1963 DeWerd and Wise incorporated Palm Beach, Inc., under the laws of the Virgin Islands and on the next day that corporation acquired a tract of 14.1 acres, Parcel 17-1 of Estate Bonne Resolution, for $105,000.00, $5,000.00 in cash and $100,000.00 by purchase money mortgage from the lien of which, however, was excluded a lot of approximately one acre lying between the road and the sea, Parcel 17-1-1. It appears that the corporation failed to comply with the requirements of the law for holding organization meetings of the incorporators and stockholders. The district court accordingly held it to be a fact a partnership in which DeWerd had a two-thirds interest and Wise a one-third interest. The only free asset

of this partnership is the unencumbered lot of one acre which is worth $15,000.00. Wise's interest is, therefore, $5,000.00.

■ The district court found, on ample evidence, that neither Wise nor DeWerd had suffered in their credit standing as a result of their business arrangements and accordingly denied to each of them the damages sought from the other on that account.

■■ We are satisfied that the evidence fully supports the findings upon which the district court concluded that WDW, Inc. is entitled to have the joint venture formally declared dissolved and upon dissolution to receive from Cote De La Mer Corporation in settlement of their accounts the sum of $10,652.97, the amount by which Cote De La Mer Corporation overdrew and WDW, Inc. underdrew from the venture. We are likewise satisfied that the evidence supports the conclusion that Wise is entitled to receive from DeWerd the sum of $5,000.00 upon the dissolution of the Palm Beach, Inc., partnership, the land which was conveyed to that inchoate corporation being retained by DeWerd. Three other conclusions of the district court present real difficulty, however.

■ As we have seen, the third conclusion of the court was that WDW, Inc. owes DeWerd personally $21,446.00 for the payment of WDW, Inc. obligations. The court found as a fact that DeWerd had personally paid this sum on account of debts of WDW, Inc. The fact is substantiated by the evidence but this does not end the matter. For although WDW, Inc. was wholly owned by Wise it was in incurring these obligations acting for the joint venture and not solely on its own account. For either WDW, Inc. or Cote De La Mer Corporation were authorized by the joint venture agreement of August 23, 1962 to "transact business for the joint venture" and it appears that the debts of WDW, Inc. with which we are here concerned were con-

tracted for the joint venture. Accordingly DeWerd must look to his own corporation Cote De La Mer Corporation for reimbursement for two-thirds of the amount and only one-third, or $7,148.67, is due to him from WDW, Inc.

■■ The court's conclusion No. 2 was that WDW, Inc. owes DeWerd $47,000.00 for unpaid additional compensation pursuant to the joint venture agreement. What has just been said applies with equal force here. Certainly no more than one-third of the compensation of Wise and DeWerd for their services to the joint venture including this additional compensation for DeWerd, would in any event be chargeable to WDW, Inc. But we are of opinion that for another reason none of it is chargeable to WDW, Inc. It will be recalled that the joint venture agreement provided in this regard that DeWerd's additional compensation was "to be paid in sums of $500.00 each upon the closing of the first ninety-four (94) lots sold by the joint venture." We think that this is a clear indication that the additional compensation was related to the sale by the joint venture of the lots which they had under option from MacDonald of Puerto Rico, Inc., and was to be paid when and as, and only when and as, those lots were sold. Since none was sold the additional compensation never became payable.

Finally in its first conclusion the district court held that Wise personally owes DeWerd $45,000.00 for the unpaid notes whereby Wise obtained stock of Bon Ami, Inc. We are clear that this conclusion and the findings upon which it rests cannot stand. For the plain documentary evidence is to the contrary. In the first place the agreement of February 13, 1962 in which Wise agreed to pay DeWerd $45,000.00 for the stock in specified installments, as well as the notes given on August 7, 1962 to cover the installments, were specifically cancelled by the agreement of May 2, 1963 between DeWerd and Wise. That later agreement acknowledged the indebtedness of

$45,000.00 but specifically directed that it should be paid in installments of $500.00 at the time of the closing of each of the first ninety lots sold pursuant to the joint venture agreement. Moreover it specified that the payment should be made in each case directly to DeWerd by the attorney representing the joint venture in selling that particular lot. This could only mean that the payments of $500.00 were to be made out of Wise's (or WDW, Inc.'s) one-third share of the net proceeds to the joint venture from the sale of the lots.

■ It is well settled, however, that if a debtor and creditor contract for the payment of an obligation out of a particular fund to be created in the future and the fund, without fault of the debtor, never comes into existence, no recovery can be had by the creditor. Chambers v. Jaynes, 1846, 4 Pa. 39; Orman v. Ryan, 1897, 25 Colo. 383, 55 P. 168; Creery v. Thompson, 1904, 26 Pa. Super. Ct. 511; Keller v. Cohen, 1907, 217 Pa. 522, 66 A. 862; Frank v. Butte & Boulder Mining & Lumber Co., 1913, 48 Mont. 83, 135 P. 904; Gardiner v. Equitable Office Bldg. Corporation, 2 Cir. 1923, 294 F. 496; Harmer v. Tracey, 1934, 115 W. Va. 349, 176 S.E. 238; Schenley Farms Co. v. Allegheny County, 1944, 349 Pa. 637, 37 A.2d 554; 1 Wharton, Contracts, 1882, § 598; 70 C.J.S. Payment § 11. And see the discussion in Howard v. Hancock Oil Co. of California, 9 Cir. 1934, 68 F.2d 694, 697. This principle of law is controlling here since no lots were sold and the option under which the joint venture could take lots down and sell them has terminated. Thus the fund from which these payments were to be made has not and cannot come into existence.

■ It is true, of course, that if in such a situation the debtor has agreed to take definite steps to raise the fund and refuses to do so he may be held individually liable because of that refusal. Scranton Axle & Spring Co. v. Scranton Board of Trade, 1929, 297 Pa. 26, 146 A. 139. It

is not suggested here, however, that the failure of the joint venture to sell lots was due to any default on the part of Wise. DeWerd may, therefore, not recover on his claim for $45,000.00 against Wise.

The judgment of the district court will be vacated and the cause remanded for the entry of a judgment not inconsistent with this opinion.